J-A02007-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF J.M.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1015 WDA 2025 |

Appeal from the Order Entered July 11, 2025
In the Court of Common Pleas of Greene County
Orphans' Court at No:  No. 1 O.A. 2025

| | | |
|---|---|---|
| IN RE: ADOPTION OF J.G.O.G.,  A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1016 WDA 2025 |

Appeal from the Order Entered July 11, 2025
In the Court of Common Pleas of Greene County
Orphans' Court at No:  No. 4 O.A. 2025

| | | |
|---|---|---|
| IN RE: ADOPTION OF M.J.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1017 WDA 2025 |

Appeal from the Order Entered July 11, 2025
In the Court of Common Pleas of Greene County
Orphans' Court at No:  2 O.A. 2025

IN RE: ADOPTION OF C.A.G., A    :    IN THE SUPERIOR COURT OF
MINOR    :        PENNSYLVANIA
   :
   :
APPEAL OF: D.M.C., MOTHER    :
   :
   :
   :
   :
   :    No. 1018 WDA 2025

Appeal from the Order Entered July 11, 2025
In the Court of Common Pleas of Greene County
Orphans' Court at No: 3 O.A. 2025

BEFORE: STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY STABILE, J.:        **FILED: February 2, 2026**

M.F. ("Mother") appeals from the July 11, 2025, orders that involuntarily terminated her parental rights to her daughters, J.M.G., born in February 2018, and M.J.G., born in June 2019; and sons, C.A.G., born in April 2021, and J.G.O.G., born in July 2023 (collectively, "the Children").[1] Upon review, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record. Greene County Children and Youth Services ("CYS") initially became involved with this family in October 2023, when it received a report alleging illicit drug use by Parents and deplorable housing conditions at

_____

[1] The father of the Children, J.A.G. ("Father") (collectively with Mother, "Parents"), passed away in June 2025, between the first and second day of the subject proceeding. *See* CYS Exhibit 4. Father was not listed on the birth certificates of J.M.G. and J.G.O.G. Therefore, as to these children, the court also involuntarily terminated the parental rights of any unknown putative fathers. No unknown putative fathers filed appeals in the instant case.

their residence. **See** N.T., 3/31/25, at 91. On October 25, 2023, CYS caseworker, Ariel Miller, observed the home to be "very dark, very cluttered, very dirty." **Id.** at 91-92. She described that there were "open bottles of chemicals" on the kitchen counters and "pills left out on tables" where the Children could reach them. **Id.** at 92. During this visit, CYS requested that Mother submit to a voluntary drug test, but she refused. **See id.** at 97.

The same day as the home visit, the court placed the Children in the emergency protective custody of CYS. The court adjudicated the Children dependent on November 2, 2023. The girls were placed together in a foster home, and the boys were placed together in a separate foster home. The Children's respective placements are both pre-adoptive. **See** N.T., 7/11/25, at 13. We also discern that the Children have remained in their placements throughout these proceedings.

The court established the Children's primary permanency goals as reunification with concurrent goals of adoption. In furtherance of reunification, the court ordered Mother to, *inter alia*: (1) engage in a drug and alcohol evaluation and comply with all treatment recommendations; (2) attend random drug screens; (3) obtain and maintain safe and appropriate housing; (4) attend and complete parenting classes; and (5) participate in supervised visitation with the Children. **See** N.T., 3/31/25, at 93.

Throughout the Children's ensuing dependencies, Mother failed to meaningfully comply with, or make progress toward the completion of, these

goals. For instance, Mother never participated in a drug and alcohol evaluation. *See id.* at 99. She failed to comply with all of the random drug screen requests made of her, and, on ten occasions, she tested positive for substances detailed below. *See id.* at 97-99. With respect to supervised visitation, Mother attended the majority of the visits, but she failed to demonstrate appropriate parenting skills. *See id.* at 48, 74, 79 Finally, Mother never permitted CYS into her home, contrary to the requirements of her housing objective. *See id.* at 94-96.

On January 28, 2025, CYS filed petitions seeking the involuntary termination of Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The guardian *ad litem* ("GAL") from the underlying dependency cases fulfilled the same role in the termination proceedings. Further, in compliance with Section 2313(a) of the Adoption Act, the court appointed Lukas Gatten, Esquire, as legal interest counsel for the Children.[2] *See* Orders, 2/11/25.

The orphans' court conducted an evidentiary hearing on March 31, 2025, and July 11, 2025, at which time the Children were seven, six, four, and two

---

[2] *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1234-36 (Pa. 2020) (holding that "appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" 23 Pa.C.S.A. § 2313(a)). Based upon the orphans' court's appointment of legal interest counsel for the Children, we discern no structural error here.

years old, respectively. CYF presented the testimony of Eric Bernstein, Psy. D., who performed a bonding evaluation of Parents and the Children and was accepted by the court as an expert in psychology; Natasha Brown, CYS social service aide; Brandy Scholley, parent educator with Greene County Human Services; and Ms. Miller. CYS also introduced, and the court admitted, six documentary exhibits including Dr. Bernstein's report, which was marked and admitted as CYS Exhibit 1. Mother, who was represented by counsel and had voluntarily entered a drug treatment program immediately prior to the commencement of the proceeding, participated via telephone on March 31, 2025, and did not appear on July 11, 2025. Mother did not testify or offer any evidence on her own behalf.

By orders dated and entered July 11, 2025, the orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On August 11, 2025, Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*. On October 29, 2025, the orphans' court filed its Rule 1925(a) opinion.

On appeal, Mother presents the following issues for our review:

1. Whether the trial court erred in finding that [CYS] had proven by clear and convincing evidence that [Mother] had established the statutory grounds for termination as alleged under 23 Pa.C.S.[A.] § 2511(a)(1)[?]

2. Whether the trial court erred in finding that [CYS] had proven by clear and convincing evidence that [Mother] had established

the statutory grounds for termination as alleged under 23 Pa.C.S.[A.] § 2511(a)(2)[?]

3. Whether the trial court erred in finding that [CYS] had proven by clear and convincing evidence that [Mother] had established the statutory grounds for termination as alleged under 23 Pa.C.S.[A.] § 2511(a)(5)[?]

4. Whether the trial court erred in finding that [CYS] had proven by clear and convincing evidence that [Mother] had established the statutory grounds for termination as alleged under 23 Pa.C.S.[A.] § 2511(a)(8)[?]

5. Whether the trial court erred in finding that the termination of [Mother's] parental rights was in the best interests of the [C]hild[ren] under 23 Pa.C.S.[A.] § 2511(b)[?]

Mother's Brief at 7 (suggested answers omitted).[3]

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-

---

[3] The Children's GAL submitted a brief wherein he advocated for this Court to affirm the orders involuntarily terminating Mother's parental rights. We note with displeasure that the Children's legal interest counsel failed to file a brief. During the proceeding, the Children's legal counsel advocated for the court to involuntarily terminate Mother's parental rights. *See* N.T., 7/11/25, at 16-17.

will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b). This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See M.E.*, 283 A.3d at 830 (citing *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

Our analysis in this case will focus upon 23 Pa.C.S.A. § 2511(a)(2) and (b),[4] which provide, as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

In order to satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal;

---

[4] Given our disposition with respect to Section 2511(a)(2), we need not review the orphans' court's findings regarding Section 2511(a)(1), (5), or (8). **See In re K.R.**, 200 A.3d 969, 979 (Pa. Super. 2018) (*en banc*) (observing that this Court may proceed to a review of one subsection of Section 2511(a) "[w]ithout considering the orphans' court's determinations" under any other subsection).

(2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Grounds for termination pursuant to Section 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citing *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010)). Overall, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443.

If the orphans' court concludes that adequate grounds for termination exist pursuant to Section 2511(a), the court then turns to Section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has directed that a Section 2511(b) inquiry must include consideration for the bond between the parent and the child. *In re E.M.*, 620 A.2d 481, 485 (Pa. 1993); *see also Interest of K.T.*, 296 A.3d 1085, 1109-10 (Pa. 2023). "However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *Id.* (citing *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008)). In weighing the bond considerations

pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *T.S.M.*, 71 A.3d at 269. Indeed, the High Court stated:

> Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children.

*Id.* The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Our Supreme Court has recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. Further, orphans' courts "must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 1106.

Instantly, with respect to Section 2511(a)(2), Mother argues that the court abused its discretion due to insufficiency of the evidence. *See* Mother's Brief at 23-24. Specifically, Mother contends that CYS did not meet its burden of proof because she attended drug and alcohol treatment between March 2025 and May 2025, and she worked with Ms. Scholley, the parent educator from a different agency, to improve her parenting skills. *See id.* at 23, 24. Mother is not entitled to relief.

In its Rule 1925(a) opinion, the orphans' court explained that Mother did not satisfy her goals, as follows.

> While Mother did attempt to get addiction treatment, she was unsuccessfully discharged May 17, 2025, for violent and assaultive behavior.  *See* N.T., 7/11/25, at 10.  Importantly, Mother also continued to test positive for illegal substances, the last drug test being July 9, 2025, two days before [the final day of] the hearing.  At that time, she tested positive for THC and cocaine.  She has no known prescription for THC.
>
> [] Mother was offered 71 visits, and she attended 61.  *See* N.T., 3/31/25, at 48.  Testimony did indicate that Mother brought gifts and snacks for the [Children] when she attended her scheduled visits.  However, testimony also revealed that Mother attended visits in dirty and foul smelling clothes, exhibited hygiene issues, seemed to be "nodding off," and would have red and swollen hands.

Orphans' Court Opinion, 10/29/25, at 2-3 (cleaned up).  The certified record confirms the court's findings.

The record amply demonstrates that Mother had not remedied her drug abuse.  Ms. Miller, the CYS caseworker, testified that Mother never participated in the court-ordered drug and alcohol evaluation.  *See* N.T., 3/31/25 at 99.  Throughout the Children's dependencies, Mother frequently tested positive for illicit substances or refused to be randomly tested.  *See* N.T., 3/31/25, at 97-99.  Specifically, CYS requested twenty drug screens of Mother.  *See id.*  She refused on four occasions and failed to appear in one instance.  *See id.*  On a separate occasion, she could not produce a urine sample.  *See id.*  When she submitted to screening, she tested positive for substances on ten occasions.  *See id.*  Mother tested positive for a myriad of

substances including buprenorphine, amphetamines, methamphetamines, methadone, cocaine, and THC.[5]  **See id.**  Ms. Miller stated that on July 9, 2025, just two days before the conclusion of the termination hearing, Mother tested positive for cocaine and THC.  **See** N.T, 7/11/25, at 12.  Nevertheless, Ms. Miller stated that Mother remained adamant that she did not have a drug problem.  **See** N.T., 3/31/25, at 105.

Ms. Miller, Ms. Scholley, and Ms. Brown, CYS social service aide, also noted that, at times, Mother appeared to attend visitations with the Children while on substances due to her erratic behavior, poor hygiene, and physical appearance.  **See id.** at 52-53, 76, 79-80, 99-100. Thus, it is apparent that Mother had not remedied her drug abuse.

To the extent that Mother enrolled in a drug treatment program on March 28, 2025, immediately prior to the start of the involuntary termination proceeding, it was untimely.  **See A.H.**, 247 A.3d at 443 (stating that parents "are required to make diligent efforts toward the reasonably prompt assumption of full parental duties").  Even if the court was required to credit it, the record reveals that she was unsuccessfully discharged from the program on May 17, 2025, due to "aggressive and violent behavior."  CYS Exhibit 5.

---

[5] Ms. Miller testified that Mother does not possess a medical marijuana card. **See** N.T., 7/11/25, at 12.  Further, we note that buprenorphine and methadone are legal substances.  However, there is no indication in the certified record these medications were prescribed to Mother or otherwise utilized under medical supervision.  **See** N.T., 3/31/25, at 97.

Mother's argument regarding her participation in parenting classes is also unavailing. Mother attended 61 out of a total of 71 visits offered by CYS. *See id.* at 48. Ms. Scholley testified that she supervised twenty to thirty of these visits between Mother and the Children. *See id.* at 73. She described the visits as "chaotic" with Mother having no control. *Id.* at 74. Despite working with Mother for approximately two years, Ms. Scholley stated Mother had not made any progress in improving her parental skills. *See id.* at 74, 79.

Finally, Mother failed to satisfy her housing objective. *See id.* at 94-96. Mother was evicted from the house where CYS removed the Children. *See id.* at 94. She later provided a new home address. *See id.* at 94. Ms. Miller testified that she attempted to inspect the house on "at least five" occasions. *Id.* at 96. Despite coordination with Mother to observe the residence, each time she arrived "[n]o one answered the door." *Id.*

Based upon the foregoing, we conclude that the record clearly establishes that Mother suffers from repeated and continued incapacities due to her drug abuse, deficient parenting skills, and failure to comply with her housing objective. These incapacities have caused the Children to be without essential parental care, control, or subsistence necessary for their physical and mental well-being since their removal in October 2023. Finally, the record indicates that Mother's incapacities will not be remedied as evidenced by her failure to make any progress or improvement despite almost two years of

court-ordered services. Therefore, we discern no abuse of discretion in the orphans' court's determination that involuntary termination of Mother's parental rights was warranted pursuant to Section 2511(a)(2).

Since adequate grounds exist for termination pursuant to Section 2511(a), we now turn to Section 2511(b). Mother argues that the court abused its discretion pursuant to this section of the statute because the Children have had "regular, continuous and productive" visitations with her during their dependencies that resulted in a bond even recognized by Dr. Bernstein. Mother's Brief at 30-31. She argues that terminating her parental rights would "traumatize them forever" due to the alleged bond created through supervised visitations. *Id.* at 31. Finally, Mother asserts that, to the extent that the court terminated her parental rights because she did not satisfy her housing objective, "a parent should not lose their rights only on . . . their inability to obtain suitable housing." *Id.* (citing, in part, 23 Pa.C.S.A. §2511(b)). Mother ultimately contends that she utilized all resources at her disposal so she can be a mother to the Children. *See id.*

In its Rule 1925(a) opinion, the court explained its rationale pursuant to Section 2511(b), as follows.

> While the [c]ourt does not doubt Mother's love for the [Children], unfortunately, loving your child is not enough. There is at least somewhat of a bond between Mother and the [Children], as she has mostly attended visits and has maintained contact. The [c]ourt believes though that the permanent severing of the bond is necessary here and in the [Children's] best interest.

Orphans' Court Opinion, 10/29/25, at 6-7. We discern no error or abuse of discretion in the court's reasoning, which is supported by the record.

Initially, Dr. Bernstein recognized that a bond existed between Mother and the Children, but he did not opine that it was strong and secure. *See* N.T., 3/31/25, at 20, 29, 41-42; *see also* CYS Exhibit 1 at 11. Dr. Bernstein considered Mother's drug use and inability to accept any responsibility for the Children's dependencies and then testified that Mother's "capacity to provide [for] the [C]hildren's needs [is] **at a minimum**." N.T., 3/31/25, at 20 (emphasis added).

Moreover, Ms. Miller, testified that termination of Mother's parental rights would not have a detrimental effect on the Children. *See id.* at 121-122. In fact, there is no record evidence that Ms. Miller believed that a parent-child bond existed between Mother and the Children. Rather, she agreed that the Children receive love, security, and safety from their respective pre-adoptive foster parents, with whom, as best we can discern, they have been placed since their removal. *See id.* at 122; *see also* N.T., 7/11/25, at 13.

Further, Mother's contention that her supervised visitations with the Children were "productive" is belied by the certified record. As related *supra*, Ms. Scholley testified that Mother could not parent the Children during visitation. *See* N.T., 3/31/25, at 74, 79. She stated that "[Mother never had] control of the situation with the [Children]. [N]o matter what was presented to [her], [the Children] were always just all over the place." *Id.* at 74. Ms.

- 15 -

Scholley further indicated that when she attempted to guide Mother, she "would always be like, [`]I know what I'm doing. I don't need anybody to help.[']" *Id.* Each witness also testified that visitations, which remained supervised throughout the Children's dependencies, were chaotic and that Mother could not control the Children. *See id.* at 16-17, 53-54, 74, 119-120.

To the extent that Mother argues that the orphans' court terminated her parental rights solely based upon environmental factors, we conclude that her contention is unavailing. *See* 23 Pa.C.S.A. § 2511(b) (providing, in part, "The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent."). There is no indication on this record that Mother's lack of appropriate housing was beyond her control. Moreover, as discussed *supra*, Mother's repeated and continued incapacities in this case also included her unremedied drug abuse and deficient parenting skills. Therefore, Mother's contention fails.

Based upon the foregoing, the orphans' court's conclusion that the Children's developmental, physical and emotional needs and welfare were best served by the termination of Mother's parental rights is fully supported by the certified record. Therefore, we discern no abuse of discretion pursuant to Section 2511(b). Accordingly, we affirm the orders.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  2/2/2026